IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHEILA BURGESS-WALLS,<br>    Plaintiff, | :<br>:<br>:<br>: | CIVIL ACTION |
| v. | :<br>: | NO. 11-275 |
| BROWN *et al.,*<br>    Defendants. | :<br>:<br>:<br>: | |

**Memorandum**

YOHN, J.                                                                                        August 22, 2011

      Plaintiff brings this action against Lieutenant Richard Brown ("Lt. Brown") of the Philadelphia Police Department and the City of Philadelphia alleging discrimination on the basis of race and gender and retaliation in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000 *et seq.*) and the Pennsylvania Human Relations Act ("PHRA") (43 Pa. Stat. Ann. § 951 *et seq.*). Currently before the court is defendants' motion to dismiss plaintiff's complaint for failure to state a claim. For the reasons set forth below, I will grant defendants' motion to dismiss in part, and deny in part.

**I. Factual and Procedural History**

      Plaintiff, an African-American woman, was a Philadelphia police officer from March 3, 1986, to May 14, 2010. In 2007, Captain Seaborough ("Capt. Seaborough") became plaintiff's supervisor. On June 12, 2008, September 12, 2008, and December 10, 2008, plaintiff was

"carried sick" when she actually left work two hours early and she alleges that she should therefore have "carried 'Q2' time." On December 31, 2008, plaintiff wrote a memo to Lt. Brown requesting that she be permitted to attend training, after having expressed interest in attending training to Capt. Seaborough the previous day. Lt. Brown denied plaintiff's request, replying (apparently sarcastically) that she should ask the Captain. Plaintiff alleges that it is common practice to request training from an officer other than one's direct supervisor.

On January 5, 2009, plaintiff checked her sick-time hours on the Daily Activity Report and noticed the errors from June 12, 2008, September 12, 2008, and December 10, 2008. She also recognized that there were other instances where she was carried correctly, but the other officers in her squad, Police Officers Mary Lawson, a black woman, Theresa Santamla, a black woman, and Neil Kohler, a white man, left their shifts more than two hours early but were "carried 'Q2' time" rather than being carried as sick. Plaintiff reported the allegedly different and unfair treatment to Lt. Brown, who replied that they would discuss the issue with Capt. Seaborough. Later that day, Capt. Seaborough requested a meeting with plaintiff and Lt. Brown, where plaintiff complained of different and unfair treatment and a hostile work environment created by Lt. Brown incorrectly carrying officers for sick time. She also expressed her interest in training, which she was permitted to attend.

Two days later, on January 7, 2009, plaintiff informed Lt. Brown that she would be leaving work early the next day because of a dentist appointment. Lt. Brown did not respond; instead, he walked to his office and called to plaintiff in a loud voice to follow him. Lt. Brown asked plaintiff, "What was that about?" but plaintiff did not understand what he was referring to. He stated that they must go speak with the Captain when she returns. Lt. Brown then shut the

door to his office and stood between plaintiff and the door, blocking her exit. After denying plaintiff's request to be excused, Lt. Brown pushed plaintiff back by her left arm. Plaintiff reached for the door handle and Lt. Brown stepped out of the way. Plaintiff was observed by other police officers crying as she left the office.

Later that day, Capt. Seaborough requested a meeting with Lt. Brown and plaintiff to discuss the events of that day and ordered an investigation to be conducted by the Internal Affairs Bureau. Plaintiff alleges that Capt. Seabourough did not respond appropriately to the situation because she did not discipline Lt. Brown or remove either plaintiff or Lt. Brown from the squad or division; rather, she kept plaintiff under Lt. Brown's supervision. Plaintiff was later moved to "a neutral work space" on January 9, 2009, but was not provided with a computer to perform her work, although the other three members of her squad were given computers.

Approximately seven months later, on August 7, 2009, Lt. Brown assigned plaintiff "additional work responsibilities which were not her duty to perform" but did not assign the other officers additional work. That same day, Capt. Seaborough changed the work stations and reassigned plaintiff's desk to three to four feet away from Lt. Brown's office. Plaintiff complained that she was uncomfortable and afraid to work near Lt. Brown, but Capt. Seaborough stated that plaintiff must work at that desk. Plaintiff left work sick after that meeting.

Plaintiff was out of work "under a doctor's care" on sick leave from August 9 until November 2009. On August 9, while plaintiff was out of work on sick-time, Capt. Seaborough ordered plaintiff to report to the Employee Assistance Program ("EAP") or she would be carried AWOL. Plaintiff alleges that a superior officer may not order a police officer to attend EAP when

3

out on sick leave. Plaintiff refused to attend. Then on September 26, 2009, while plaintiff was still out on sick-leave, she was ordered by Capt. Seaborough to report to a training class, which plaintiff attended.

On October 20, 2009, plaintiff filed a charge of discrimination with the EEOC, which was cross-filed with the PHRC, alleging that the City retaliated against her for opposing employment discrimination and she also named Lt. Brown in the charge.

In November 2009, plaintiff returned to work from sick leave but was demoted from the "Compstat" team to street patrol and put on a rotating shift after having worked a steady shift for ten years. On May 14, 2010, plaintiff retired from the Philadelphia Police Department.

Plaintiff filed her complaint on January 18, 2011. Defendants then filed this motion to dismiss.

**II. Legal Standard**

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (2009).

In evaluating a motion to dismiss, "the factual and legal elements of a claim should be separated." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."

*Id*. at 210-11. The assumption of truth does not apply to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. Rather, the complaint must contain "'enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atl. Corp.*, 550 U.S. at 556) (internal citations omitted).

### III. Discussion

Plaintiff alleges that defendants violated Title VII and the PHRA by discriminating and retaliating against her. Title VII and the PHRA may be assessed using the same legal standard. *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (explaining that Pennsylvania courts assess PHRA in accord with its federal counterparts); *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 317 (3rd Cir. 2000) (stating that Title VII and PHRA discrimination analyses are the same). One important distinction, however, is that under section 955(e) of the PHRA, supervisory individuals may be liable for aiding and abetting an employer's discriminatory conduct. *Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren P.C.*, 20 F. Supp. 2d 885, 887 (E.D. Pa. 1998) (citing *Dici v. Pennsylvania,* 91 F.3d 542, 552-53 (3d Cir. 1996)). Plaintiff alleges that Lt. Brown was her supervisor and he therefore may be liable under the PHRA. No comparable provision for individual liability exists under Title VII. Lt. Brown may therefore be held liable only under the PHRA.

### A. Applicable Statute of Limitations

Defendants argue that both Title VII and the PHRA impose a 180-day limitations period for filing an administrative complaint with the EEOC and the PHRC, respectively. Defendants argues that although the EEOC 180-day limitations period may be extended to 300 days where there is a dual filing with a state agency, that occurs only where the plaintiff files a charge of discrimination with the state agency *first*. Plaintiff filed a charge of discrimination with the EEOC, which was then cross-filed with the PHRC, on October 20, 2009. According to defendants, any discrete discriminatory acts that occurred before April 23, 2009, are not actionable here under either Title VII or the PHRA. Plaintiff responds that where there is dual filing with the EEOC and a state agency, the filing deadline is extended to 300 days for both the Title VII and PHRA claims.

Plaintiff and defendants both misstate the law. The applicable statute of limitations set by Title VII depends on whether plaintiff filed her charge of discrimination in a state that has its own state agency authorized to grant relief for federally prohibited employment discrimination, called a deferral state, or a state that does not have such an agency. *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir. 2000). In a deferral state such as Pennsylvania, plaintiffs must submit their discrimination charge to the EEOC within 300 days of the allegedly discriminatory employment action. *Id*. The extended limitations period applies only to the federal discrimination claims, however. *Rosenberg v. Voutto*, No. 10-3526, 2010 U.S. Dist. LEXIS 114283, *24-25 (E.D. Pa. Oct. 26, 2010) (citing *Woodson v. Scott Paper Co.*, 109 F.3d 913, 916 (3d. Cir. 1997)). To satisfy the filing requirements of the PHRA, the charge must be filed with the PHRC, either by plaintiff or cross-filed by the EEOC, within 180 days of the discriminatory act. *Id*. Therefore,

there are two applicable statute of limitations here, a 180-day filing period for PHRA claims– so that acts that occurred before April 23, 2009, are time-barred under the PHRA– and a 300-day period for Title VII claims– so that acts that occurred before December 24, 2008, are time-barred under Title VII.

Plaintiff argues that acts that occurred prior to April 23, 2009, should also be considered in her PHRA claims under the continuing violations doctrine. A discriminatory act that falls outside the filing period is still actionable if it is part of a continuing violation along with at least one other discriminatory act that occurred within the filing period. *Allen v. Best Foods Baking Co.*, No. 02-CV-3663, 2003 U.S. Dist. LEXIS 24675, at *8-9 (E.D. Pa. Oct. 22, 2003).  To determine whether there is a continuing violation, the Third Circuit considers the following factors: "(1) subject matter – whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency – whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence – whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001).

Plaintiff has failed to allege a continuing violation. Plaintiff alleges that on January 5, 2009, she realized there were errors on her Daily Activity Report and complained to Lt. Brown and Capt. Seaborough. The confrontation with Lt. Brown and subsequent meeting with Capt. Seaborough occurred a few days later. The next allegedly discriminatory act in plaintiff's complaint occurred on August 7, 2009, when Lt. Brown assigned plaintiff additional work. Plaintiff has not alleged that the discriminatory acts were of the same subject matter or were

frequent. Alleged discriminatory or retaliatory acts in plaintiff's complaint that occurred before April 23, 2009, may therefore be considered in her Title VII claims against the City but are not actionable as to plaintiff's PHRA claims against the City and Lt. Brown.

## B. Discrimination Claim is Time-Barred Under Title VII and the PHRA

Plaintiff alleges that she was discriminated against when Lt. Brown denied her request for training on December 31, 2008, and when she was incorrectly carried as sick on June 10, September 12, and December 10 of 2008, despite other officers being given leniency when taking sick time. (Compl. ¶¶ 28, 48.) Plaintiff's claim will be dismissed because it is time-barred.

To establish a prima facie case of discrimination, plaintiff must demonstrate that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the circumstances of the adverse employment action create an inference of discrimination. *Sarullo v. U.S.P.S.*, 352 F.3d 789, 797 (3d Cir. 2003) (citing *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802 (1973)). The first two prongs are met because plaintiff is an African-American woman and defendants concede that at this stage of proceedings, she is presumed qualified for the position.

Plaintiff has also alleged an adverse employment action. "In order to give rise to a claim of racial discrimination under Title VII, an adverse employment action must be 'sufficiently severe as to alter the employee's compensation, terms, conditions, or privileges of employment, or to deprive or tend to deprive [him or her] of employment opportunities or otherwise adversely affect his [or her] status as an employee.'" *Davis v. City of Newark*, 285 Fed. App'x 899, 90-904 (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1296-97 (3d Cir. 1997), *abrogated on*

*other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)*). The miscalculation of plaintiff's sick-time hours may have altered plaintiff's compensation or privileges of employment and therefore constitutes an adverse action. Conversely, Lt. Brown's denial of plaintiff's request on December 31, 2008, to attend a training session is not an actionable adverse action. Denial of training is sufficiently severe as to alter the terms of a plaintiff's employment or deprive a plaintiff of employment opportunities where training is necessary for career advancement. *Albright v. City of Phila.*, 399 F. Supp. 2d 575, 588 (E.D. Pa. 2005) ("Deprivation of training, if necessary for career advancement, may constitute an adverse employment action."). Plaintiff has not alleged the nature of the training program she was denied and whether it was necessary for her career advancement. Moreover, plaintiff ultimately received permission from Capt. Seaborough on January 5, 2009, to attend training and therefore did not suffer any adverse action at all.

Defendants argue that plaintiff cannot satisfy the final prong of the prima facie case, however, because she has not stated a set of facts that plausibly create an inference of discrimination. Plaintiff responds that because she was treated differently than Officer Kohler, a white man, in respect to sick days, her complaint sufficiently states facts that create an inference of discrimination. Guided by the principle that "there is a low bar for establishing a *prima facie* case of employment discrimination," I find that plaintiff has alleged facts that create an inference of discrimination.[1] *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d

---

[1] In plaintiff's complaint, she alleges that she was also treated differently than Officers Lawson and Santamla, both African-American women. Although the preferential treatment of some in plaintiff's protected group is relevant, it does not foreclose the possibility of discrimination against plaintiff. Freedom from discrimination is 'an individual rather than a

535, 539 (3d Cir. 2006).

Plaintiff's claim nonetheless fails because the errors reflected in her Daily Activity Report occurred before December 24, 2008, outside Title VII's 300-day limitations period, and are thus not actionable. Plaintiff was incorrectly carried sick on June 12, 2008, September 12, 2008, and December 10, 2008. (Compl. ¶ 13.) On January 5, 2009, plaintiff noticed the errors while checking the Daily Activity Report. Plaintiff does not argue, however, that the discovery rule should apply to toll the limitations period. The start of the limitations periods may be delayed until the "plaintiff has discovered or, by exercising reasonable diligence, should have discovered (1) that he or she has been injured, and (2) that this injury has been caused by another party's conduct." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994). The fact that plaintiff happened to discover these errors on January 5, 2009, is not sufficient to apply

---

group entitlement.'" *Simpson v. Kay Jewelers*, 142 F.3d 639, 646 (3d Cir. 1998). For instance, in the discriminatory firing context, the Third Circuit concluded that plaintiffs are not required to demonstrate that defendants hired someone outside their protected class to establish their claim. *Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344 (3d Cir. 1999). The court explained that "[e]ven if the plaintiff was replaced by someone within her own class, this simply demonstrates that the employer is willing to hire people from this class . . . and does not establish that the employer did not fire the plaintiff on the basis of her protected status." *Id*. at 353. Plaintiff has the ultimate burden to establish that defendants discriminated against her and to prevail would have to counter evidence that defendants treated Officers Lawson and Santamla favorably. *See id.* at 354 ("The fact that a female plaintiff claiming gender discrimination was replaced by another woman might have some evidentiary force, and it would be prudent for a plaintiff in this situation to counter (or explain) such evidence.") But because "[t]he burden of establishing a prima facie case of disparate treatment is not onerous," *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (U.S. 1981), I find that plaintiff has alleged a prima facie case. *Cf. Simpson*, 142 F.3d at 646 (noting that while evidence that "a single member of a non-protected group was allegedly treated more favorably than one member of the protected group, regardless of how many other members of the non-protected group were treated equally or less favorably" is insufficient to establish pretext, it may be sufficient to infer discrimination at the prima facie stage of the analysis).

the discovery rule and delay the start of the limitations period where plaintiff should have discovered these errors when they occurred or noticed it on a Daily Activity Report prior to January 5, 2009.

The claim is likewise time-barred under the PHRA's shorter 180-day limitations period. Furthermore, because plaintiff has not plausibly stated a PHRA claim of discrimination against the City, her claim against Lt. Brown as an aider or abettor of discrimination necessarily fails as well. *Kaniuka v. Good Shepherd Home*, No. 05-CV-02917, 2006 U.S. Dist. LEXIS 57403, *32 (E.D. Pa. Aug. 15, 2006) ("Individual defendants cannot violate *PHRA section 955(e)* when there is no corresponding *section 955(a)* violation by an employer to aid and abet."). Plaintiff's discrimination claims must therefore be dismissed as to both defendants.

### C. Retaliation Claims Under Title VII and PHRA

Plaintiff asserts that defendants retaliated against her twice, once after she complained to Capt. Seaborough and Lt. Brown on January 5, 2009, and then after she filed her charge of discrimination with the EEOC on October 20, 2009. (Compl. ¶¶ 30, 50.) Plaintiff does not allege that she has filed a new charge of discrimination with the EEOC or amended her previous charge to include the second retaliation claim, but defendants do not raise any objections to plaintiff's assertion of the additional retaliation claim. I will therefore consider both retaliation claims here. To state a prima facie case of retaliation, plaintiff must allege that (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Moore v. City of Phila.*, 461 F. 3d 331, 340-41 (3d Cir. 2006).

### 1. First Retaliation Claim against the City under Title VII and the PHRA

Plaintiff alleges that on January 5, 2009, she complained to both Capt. Seaborough and Lt. Brown of different treatment and a hostile work environment. She alleges that in retaliation for her complaint, Lt. Brown confronted her on January 7 and physically obstructed her attempt to leave his office after she informed him that she was leaving early the next day. Then, on January 9, Capt. Seaborough failed to discipline Lt. Brown properly for that incident, opting only to move plaintiff to a neutral work space without providing her with a computer.[2] And several months later, in August 2009, Lt. Brown assigned plaintiff additional work. Lastly, on two occasions while out on sick leave from August to November, Capt. Seaborough ordered plaintiff to report for training.

Although plaintiff did not allege that she complained to Lt. Brown and Capt. Seaborough of discrimination based on race or gender, *see Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995) (finding that plaintiff's letter to management was not protected activity because it did not "explicitly or implicitly" allege that age was the reason for the alleged unfairness), defendants concede, at least for purposes of the motion to dismiss, that plaintiff's complaint on January 5, 2009, constitutes protected activity under Title VII. Plaintiff has alleged several adverse actions. An adverse employment action in the retaliation context refers to an action that "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N.*, 548 U.S. at 68. The confrontation with Lt. Brown and Capt.

---

[2] Because these alleged retaliatory acts occurred before April 23, 2009, they are actionable only under Title VII and only against the City. Plaintiff's claim under the PHRA is time-barred as to these acts.

Seaborough's failure to adequately discipline him could plausibly constitute adverse actions. *Prise v. Alderwoods Grp. Inc.*, 657 F. Supp. 2d 564, 620 (W.D. Pa. 2009) ("[R]etaliatory harassment is actionable where it is sufficiently 'severe or pervasive' to dissuade an objectively reasonable employee from engaging in activity protected under *§ 2000e-3(a)*."); *Rivers v. Potter*, No. 05-4868, 2007 U.S. Dist. LEXIS 92590, *30 (D.N.J. Dec. 18, 2007) ("[T]he toleration of threats in the workplace is something that might cause a reasonable employee to refrain from additional protected activity.") Also, being assigned new duties to perform that are outside the scope of plaintiff's job and being ordered to come in from sick leave while under a doctor's care for training could plausibly dissuade an objectively reasonable employee from engaging in protected activity.

Plaintiff has also pleaded enough facts to establish a casual link between her protected activity and two of the alleged adverse actions. Temporal proximity between the plaintiff's protected activity and the adverse employment action may be sufficient to establish causation when it is "unusually suggestive." *Farrell v. Planters Lifesavers Co.*, 206 F. 3d 271, 280 (3d Cir. 2000). The Third Circuit has rejected any bright-line rule specifying how much time can pass between the protected activity and the allegedly retaliatory act while remaining unusually suggestive. *Morrin v. Torresdale Frankford Country Club*, No. 07-5527, 2008 U.S. Dist. LEXIS 45951, at *10-11 (E.D. Pa. June 11, 2008). Instead, the Third Circuit has opted for a "fact-based" approach and has "ruled differently on this issue . . . depending, of course, on how proximate the events actually were, and the context in which the issue came before [the court]," including the procedural posture of the case. *Id*. at 279 ("There is clearly a difference between two days and nineteen months. There is also a difference between a plaintiff relying upon temporal proximity

13

to satisfy her prima facie case for the purpose of summary judgment, and to reverse a verdict." (internal citations omitted)). Nevertheless, courts have generally found unusually suggestive temporal proximity only where the adverse employment action occurs contemporaneously or immediately after the protected activity. *Compare Doe v. C.A.R.S. Prot. Plus*, 527 F.3d 358, 369 (3d Cir. 2008) (finding three-day gap is unusually suggestive), *Alexander v. Keystone Mercy Health Plan*, No. 06-5599, 2007 U.S. Dist. LEXIS 41219, at *14-15 (E.D. Pa. June 5, 2007) (finding that "[v]iewed in the light most favorable to the plaintiff" two-week gap is "sufficient to satisfy the 'causal connection'"), *with Williams v. Phila. Hous. Auth. Police Dep't,* 380 F.3d 751, 760 (3d Cir. 2004) (finding that two months was not unusually suggestive).

Here, only two to four days passed between plaintiff's complaint on January 5 and the confrontation with Lt. Brown on January 7 and plaintiff's subsequent removal to "a neutral workplace" without a computer on January 9, which constitutes unusually suggestive temporal proximity. Plaintiff has therefore sufficiently pleaded a prima facie case of retaliation for her complaint in January under Title VII.  The seven-month gap between plaintiff's complaint and the alleged adverse actions in August, however, is not unusually suggestive. Where temporal proximity is not unusually suggestive, a plaintiff may rely on "timing plus other evidence," such as a pattern of antagonism, or provide any other circumstantial evidence from which causation can be inferred. *Farrell*, 206 F. 3d at 281. Plaintiff does not allege any other facts to establish a causal link between her complaint in January and the acts in August. Those actions are therefore not actionable in her Title VII or PHRA retaliation claim.

Because plaintiff has not alleged a casual link between her complaint on January 5 and the retaliatory acts in August, and because the retaliatory acts in January occurred outside the

PHRA's 180-day limitations period, there is no retaliation claim under the PHRA against the City and Lt. Brown stemming from her January 5 complaint. A Title VII claim remains, however, but only for the retaliatory acts that occurred on January 5 and 7.

### 2. Second Retaliation Claim against the City and Lt. Brown under Title VII and the PHRA

Plaintiff filed her charge of discrimination on October 20, 2009. Filing a charge with the EEOC and PHRC is protected activity. 42 U.S.C. § 2000e-3. Plaintiff alleges that in November, upon her return from sick leave, she was removed from the "Compstat" team, demoted to street patrol, and put on a rotating shift despite having worked the steady shift for ten years. Demotion and change to an unfavorable shift constitute adverse employment actions. *See Burlington N.*, 548 U.S. 53.

Plaintiff does not provide an exact date on which she was demoted and put on a rotating shift, so temporal proximity cannot be precisely measured. The gap between plaintiff's filing on October 20 and her demotion in November may be anywhere from twelve days to forty-two days. *Compare Schatzman, Martin Newark Dealership, Inc.*, 158 F. Supp. 2d 392, 404 (D. Del. 2001) (finding that one-month gap is unusually suggestive) *with Williams,* 380 F.3d at 760 (finding that two months is not unusually suggestive). Plaintiff alleges that she was out on sick leave from August until November and that she was demoted in the month that she returned to work. Although there may have been a little over a month between the filing of the charge and the demotion, plaintiff's absence from work may account for some delay between her protected activity and the alleged retaliation. Drawing all inferences in favor of plaintiff, I find that plaintiff has sufficiently alleged a prima facie case of retaliation against the City.

Plaintiff has failed, however, to sufficiently allege that Lt. Brown aided or abetted the City in demoting plaintiff or changing her shift. A supervisor may be liable "for his own direct acts of discrimination or for his failure to take action to prevent further discrimination by an employee under supervision." *Davis*, 20 F. Supp. 2d at 887; *see also e.g. Scully v. Allegheny Ludlum Corp.*, No. 03-1852, 2004 U.S. Dist. LEXIS 25185 (W.D. Pa. Sep. 7, 2004) (finding that plaintiff stated a claim of supervisor liability under the PHRA by alleging that defendants manipulated the peer analysis review and made the decision to terminate plaintiff); *Wien v. Sun Co., Inc.*, No. 95-7646, 1997 U.S. Dist. LEXIS 19220 (E.D. Pa. Nov. 21, 1997) (finding that plaintiff stated a claim of supervisor liability under PHRA because he alleged that defendant "participated in the meetings in which it was decided that Mr. Wien should be discharged, and drafted the termination letter"). In her complaint, plaintiff alleges only that "[f]rom November 2009 to May 2010 Plaintiff was taken off the 'Compstat' team, demoted to street patrol, and put on rotating shift." Nowhere in the complaint does plaintiff allege that Lt. Brown was at all involved with or participated in the City's decision to demote her and change her work shift. Plaintiff now asserts in her Response to Defendants' Motion to Dismiss that "Lt. Brown demoted Plaintiff to a street patrol swing shift" but this allegation does not appear in her complaint and therefore cannot be considered here, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (stating that courts deciding a Rule 12(b)(6) motion to dismiss are limited to the allegations found in the complaint, exhibits attached to the complaint, and matters of public record). Plaintiff has therefore failed to state a plausible claim of retaliation against Lt. Brown.

**D. Hostile Work Environment Claim Fails Under Title VII and PHRA**

Plaintiff fails to state a plausible hostile work environment claim under either Title VII or the PHRA. To establish a hostile work environment claim, plaintiff must demonstrate that (1) she suffered intentional discrimination because she is a member of a protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a similarly situated, reasonable person; and (5) there is a basis for employer liability. *Peace-Wickham v. Walls*, 409 Fed. App'x 512, 518 (3d Cir. 2010) (non-precedential).

Here, plaintiff has not sufficiently alleged facts in her complaint suggesting severe or pervasive discrimination. To state a hostile work environment claim, a plaintiff must plausibly allege that her "workplace was 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Brooks v. CBS Radio, Inc.*, 342 Fed. Appx. 771, 776-777 (3d Cir. 2009) (non-precedential) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (internal quotation marks and citation omitted)). To determine whether plaintiff suffered severe or pervasive harassment, I must "'look[] at all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id*. at 777 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Plaintiff has not plausibly alleged that she suffered an abusive workplace that was permeated with severe or frequent discriminatory conduct. Her hostile work environment claim under Title VII and the PHRA against the City and Lt. Brown will therefore be dismissed.

17

**IV. Conclusion**

Plaintiff alleges that the City violated Title VII and the PHRA by discriminating against her on the basis of race and gender and retaliating against her after she complained of unfair treatment and then after filing a charge of discrimination with the EEOC. Plaintiff also alleges that Lt. Brown aided and abetted the City's discrimination and retaliation. Plaintiff's discrimination claim fails because it is time-barred under both Title VII and the PHRA. Plaintiff's hostile work environment claims also fails because she has failed to sufficiently allege that she suffered severe or pervasive harassment. Plaintiff has stated two plausible claims of retaliation against the City under Title VII and one under the PHRA. Plaintiff has failed to allege, however, that Lt. Brown aided and abetted the City in retaliating against plaintiff. I will therefore grant defendants' motion to dismiss in part, and deny in part.